# EXHIBIT A

1   Tina M. Ezzell, State Bar No. 013825
    Carlotta L. Turman, State Bar No. 022305

2    TIFFANY & BOSCO
       P.A.

3   Seventh Floor Camelback Esplanade II
    2525 East Camelback Road

4   Phoenix, Arizona 85016-9240
    Telephone: (602) 255-6000

5   Facsimile:  (602) 255-0103
    E-Mail:  tme@tblaw.com; clt@tblaw.com

6   *Attorneys for Plaintiff Joseph Todd Bell*



**COPY**

NOV 0 6 2015

 MICHAEL K. JEANES, CLERK
                     J. BAKER
                     DEPUTY CLERK

7                   **SUPERIOR COURT OF ARIZONA**
                       **COUNTY OF MARICOPA**

8

9   JOSEPH TODD BELL, a married man,              CV 2015-012649

10                          Plaintiff,        Case No. _____

11       vs.

12   TRANSCOR GROUP, INC., an Arizona          **COMPLAINT**

13   corporation; INET, INCORPORATED, an
     Arizona corporation; EDOMINATE, INC., an

14   Arizona corporation; EDOMINATE, LLC, an
     Arizona limited liability company; ECM

15   SYSTEMS, INCORPORATED, an Arizona
     corporation; ECM GLOBAL, LLC, an Arizona

16   limited liability company; ECM GLOBAL, INC.,
     an Arizona corporation; LOS GLOBAL

17   SYSTEMS, LLC, an Arizona limited liability
     company; EGLOBAL SYSTEMS.US, LLC, an

18   Arizona limited liability company; JOHN
     MICHAEL BULAVINETZ and DEBORAH

19   ANN WILLIAMSON BULAVINETZ, husband
     and wife; JOHN DOES I through V, inclusive;

20   JANE DOES I through V, inclusive; ABC
     CORPORATIONS I through V, inclusive, and

21   XYZ PARTNERSHIPS, I through V, inclusive,

22

23                          Defendants.

24

25      Plaintiff Joseph Todd Bell, by and through counsel undersigned, complains and

26

                                    -1-

alleges as follows:

## PARTIES, JURISDICTION AND VENUE

1.     Plaintiff Joseph Todd Bell ("Bell" or "Plaintiff") is an individual residing in Maricopa County, Arizona.

2.     Defendant Transcor Group, Inc., was an Arizona corporation with its principal place of business in Phoenix, Arizona.

3.     Defendant INet, Incorporated, was an Arizona corporation with its principal place of business in Phoenix, Arizona.

4.     Defendant eDominate, Inc., was an Arizona corporation with its principal place of business in Phoenix, Arizona.

5.     Defendant eDominate, LLC, is an Arizona limited liability company with its principal place of business in Phoenix, Arizona.

6.     Defendant eCM Systems, Incorporated was an Arizona corporation with its principal place of business in Phoenix, Arizona.

7.     Defendant eCM Global, LLC, was an Arizona limited liability company with its principal place of business in Phoenix, Arizona.

8.     Defendant eCM Global, Inc., is an Arizona corporation with its principal place of business in Phoenix, Arizona.

9.     Defendant LOS Global Systems, LLC, is an Arizona limited liability company with its principal place of business in Phoenix, Arizona.

10.    Defendant eGlobal Systems.US, LLC, is an Arizona limited liability company with its principal place of business in Phoenix, Arizona.

11.     Defendants John Michael Bulavinetz, also known as John Michael, and Deborah Ann Williamson Bulavinetz, also known as Deborah Williamson and Deborah Bulavinetz and Deborah Michaels, (collectively "Bulavinetz") were, at all relevant times, husband and wife and residents of Maricopa County, Arizona.  All relevant actions taken by John Michael Bulavinetz were done as an agent of the various defendant business entities and for the benefit of his marital community with Deborah and in Maricopa County, Arizona.

12.     The various defendant business entities (collectively "Corporate Defendants") are successor companies that carried out the same business with the same assets, with the same owner as predecessor companies owned by Bulavinetz and are liable for the obligations of the predecessor companies owned by Bulavinetz.

13.     Such unity of interest and ownership exists between the Corporate Defendants and Bulavinetz that the Corporate Defendants are mere alter egos or business conduits of Bulavinetz and the Corporate Defendants are mere alter egos or business conduits of one another.  Therefore, Bulavinetz is personally liable for the conduct of the Corporate Defendants and the Corporate Defendants are personally liable for the conduct of one another and Bulavinetz.

14.     The exact names and identities of Defendants identified herein as John Does I through V, inclusive; Jane Does I through V, inclusive; ABC Corporations I through V, inclusive; and XYZ Partnerships I through V, inclusive, are unknown to Plaintiff at this time, and Plaintiff is without knowledge and information regarding any other individuals who might be responsible for the damages hereinafter alleged, but will

seek leave to amend this Complaint upon receipt of any such information.

15.     Defendants have caused events to occur in Maricopa County, Arizona out of which Plaintiff's claims arise.

16.     Jurisdiction and venue are proper in Maricopa County, Arizona.

**GENERAL ALLEGATIONS**

17.     Bell began employment as a software salesperson with Defendants in or about 1998 with Defendants that existed at that time.

18.     Under the employment agreement between Bell and Defendants, Bell initially agreed to work for an annual salary in the amount of $42,000.00 ($3,500.00 per month) and Defendants promised to pay Bell on a monthly basis.  In addition, Bell was to be reimbursed by Defendants for all business expenses incurred and paid by Bell.  In or about 2000, Bell and Defendants agreed to a promotion to Director of Business Development and an annual salary of $72,000.00 ($6,000.00 per month).

19.     In or about September 2004, Defendants ceased paying Bell even though Bell continued to work for Defendants through September 2005.

20.     Between February 2005 and August 2005, Bell loaned Defendants a total amount of $46,000.00 for Defendants' payroll and various other business expenses.

21.     In or about September 2005, Bell ceased working for Defendants.  At the time Bell terminated his employment with Defendants, he was owed unpaid wages for 2004 through 2005, had not been reimbursed for business expenses and had not been repaid for the loans made to Defendants.  In order to induce Bell to refrain from suing (repeatedly from 2005 through 2015), Bulavinetz promised Bell interests in the Corporate

-4-

Defendants as well as future payment.

22.     Bulavinetz thereafter indicated to Bell that if he came back to work for Defendants, Bell would more quickly be able to recover the money owed to him from Defendants.  Therefore, Bell began working for Defendants again in or about 2008.

23.     In 2008, Bell's agreed-upon salary increased to $84,000.00 annually ($7,000.00 per month).

24.     In 2009, Bell's agreed-upon salary was $84,000.00 annually ($7,000.00 per month).

25.     In 2010, Bell's agreed-upon salary was $84,000.00 ($7,000.00 per month). However, Defendants failed to pay Bell all wages owed for 2010.

26.     In or about 2011, Bell's salary increased to $84,000.00 net income (the parties agreed Defendants would pay Bell enough gross income such that he would receive and be able to keep, after taxes, $7,000.00 per month).  However, Defendants failed to issue a W2 to Bell for the wages he received in 2011.  In addition, Defendants failed to pay Bell all wages owed to him for 2011.

27.     In or about 2012, Defendants started issuing Bell a 1099 instead of a W2 for tax purposes and promised to pay Bell's Federal and State taxes arising from the 1099.

28.     Bell's agreed-upon salary was $84,000.00 net income for 2012 (the parties agreed Defendants would pay Bell enough gross income such that he would receive and be able to keep, after taxes, $7,000.00 per month).  Defendants failed to pay Bell all wages owed to him for 2012.

29.     In 2013, Bell's agreed upon salary was $84,000.00 net income (the parties agreed Defendants would pay Bell enough gross income such that he would receive and be able to keep, after taxes, $7,000.00 per month) and Defendants promised to pay Bell's Federal and State taxes for wages.

30.     Defendants issued Bell a 1099 and W2 for 2013, even though his job title and duties never changed.

31.     In or about 2014, Bell's salary increased to $93,840.00 net income (the parties agreed Defendants would pay Bell enough gross income such that he would receive and be able to keep, after taxes, approximately $7,820.00 per month) and Defendants promised to pay Bell's Federal and State taxes for wages.  Defendants issued Bell a 1099 for 2014.

32.     Defendants failed to pay Bell all wages owed to him for 2014.

33.     In or about December 2014, Bell's salary increased to $97,440.00 net income (the parties agreed Defendants would pay Bell enough gross income such that he would receive and be able to keep, after taxes, $8,120.00 per month).  Defendants also promised to pay Bell's Federal and State taxes for wages for 2015.

34.     On October 7, 2015, Bulavinetz announced that Bell's salary would be reduced to $6,000 per month and that a W2 would be issued for 1099 wages paid in 2015.

35.     Defendants have failed to pay Bell all wages owed to him to date for 2015.

36.     Defendants failed to pay all of Bell's Federal and State taxes for wages as promised.

37.     Throughout his employment with Defendants, Bulavinetz made

-6-

representations and promised Bell he would receive fifteen percent (15%) ownership in eGlobal Systems.US, ten percent (10%) of eCM Global, LLC, and eDominate, LLC, and six percent (6%) of the profits from eGlobal Systems.US and eCM Global, LLC, and fifteen (15%) of the profits from insurance revenues.

38.     From approximately July 2014 through September 2015, Bell represented LOS Global Systems, LLC, a member of eGlobal Systems.US, LLC, on the Board of Directors for eGlobal Systems.US, LLC.  Bell was never compensated for being on the Board of Directors.

39.     Bell relied upon the employment agreements he had with Defendants and the promises made by Bulavinetz, both when he accepted employment with Defendants and when he continued his employment with Defendants.

40.     Despite demand, Defendants have refused and failed to compensate Bell all money due him as a result of his employment with Defendants.

41.     Defendants still owe Bell for unpaid wages, unreimbursed business expenses, ownership interests in the Corporate Defendants and loans made to Defendants by Bell.

### COUNT ONE
### (Failure to Pay Wages)

42.     The above allegations are incorporated here by this reference.

43.     Pursuant to A.R.S. § 23-352, no employer may withhold or divert any portion of an employee's wages.

44.     Bell, an employee, was to be paid an annual salary on a monthly basis pursuant to the parties' agreement.  Bell was also to be reimbursed for business expenses.

-7-

45.     Defendants, employers, have failed to pay to Bell the full amount of wages due to him.

46.     There is no legal justification for Defendants' failure to pay Bell his annual salary as agreed upon by the parties or to reimburse Bell for his expenses.

47.     Pursuant to A.R.S. § 23-355 *et seq.*, Bell is entitled to recover from Defendants triple the amount of his unpaid wages.

## COUNT TWO
### (Breach of Contract)

48.     The above allegations are incorporated here by this reference.

49.     Bell had employment agreements with Defendants.   The employment relationship is contractual in nature.

50.     Among the terms of the parties' contracts was that Bell would be paid an annual salary on a monthly basis, be reimbursed for his business expenses and be paid back for loans he made to Defendants.

51.     During his employment, Bulavinetz promised and the parties agreed that Bell would receive ownership interests in eGlobal Systems.US, eCM Global, LLC, Transcor Group, INet, eDominate and eCM Systems and share in profits.

52.     Defendants have refused and failed to pay wages to Bell, reimburse Bell for business expenses, repay Bell for loans made to Defendants, and transfer the promised ownership interests in the Corporate Defendants.

53.     Defendants have breached their employment agreements with Bell.

54.     Defendants' failures to fulfill their promises constitute breaches of their employment agreements with Bell.

-8-

55.     Bell has been damaged by Defendants' breaches in an amount to be determined at trial.

56.     Bell is entitled to specific performance of the terms, conditions and provisions of his employment agreement with Defendants, by Court decree, ordering Defendants to comply with the parties' agreement.

57.     Bell is entitled to attorney fees and costs pursuant to A.R.S. §§ 12-341 and 12-341.01.

## COUNT THREE
### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

58.     The above allegations are incorporated herein by this reference.

59.     Implied in every contract is a covenant of good faith and fair dealing which prohibits any party to a contract from acting in a manner that deprives any other party of the benefit of its bargain.

60.     A party can breach the covenant of good faith and fair dealing both by exercising express discretion in a way inconsistent with another party's reasonable expectations and by acting in ways not expressly excluded by the contract's terms but which nonetheless bear adversely on a party's reasonably expected benefits of the bargain.

61.     Bell rendered labor and services for Defendants, paid business expenses and made business loans to Defendants for which he had a reasonable expectation to be paid, reimbursed and repaid under his employment agreements.  By failing to compensate Bell, Defendants have breached the express and implied terms of their contract with Bell.

62.     As a result of Defendants' breaches of contract, including breaches of the

-9-

covenant of good faith and fair dealing, Bell has been damaged financially in an amount to be proven at trial.

## COUNT FOUR
### (Unjust Enrichment)

63.     The above allegations are incorporated herein by this reference.

64.     In the alternative, and only if Bell's breach of contract and statutory unpaid wages claims fail, Bell asserts this unjust enrichment claim against Defendants.

65.     Defendants were enriched when Bell rendered labor and services for Defendants but Defendants failed to pay Bell his earned wages, reimburse him for his business expenses, transfer the promised ownership interests in the Corporate Defendants and repay business loans made to Defendants by Bell.

66.     Bell was impoverished when he rendered labor and services for Defendants, paid business expenses and loaned money to Defendants but received no compensation for his labor and services, no reimbursement for business expenses and was never repaid for business loans made to Defendants.

67.     There is no justification for Bell's impoverishment and Defendants' corresponding enrichment.

68.     Should Bell's contract and statutory unpaid wages claims fail, then Bell will have no adequate legal remedy to address his impoverishment.

## COUNT FIVE
### (Fraud)

69.     The above allegations are incorporated herein by this reference.

70.     Bulavinetz made oral and written representations to Bell regarding how he

-10-

would be compensated during his employment with Defendants.

71.    Bulavinetz's representations were material because they induced Bell to accept employment with Defendants and to continue his employment with Defendants.

72.    Bulavinetz's representations were false.

73.    Bulavinetz knew his representations were false.

74.    Bulavinetz intended that his representations be acted upon by Bell and in the manner reasonably contemplated.

75.    Bell was ignorant of the falsity of Bulavinetz's representations.

76.    Bell relied on the truth of Bulavinetz's representations.

77.    Bell had a right to rely on Bulavinetz's representations.

78.    Bell was consequently and proximately injured in an amount to be proven at trial.

## COUNT SIX
### (Negligent Misrepresentation)

79.    The above allegations are incorporated herein by this reference.

80.    Bulavinetz supplied false information to Bell about his employment terms, conditions, and compensation prior to and while employed with Defendants.

81.    Bulavinetz intended, knew, or reasonably should have foreseen Bell's reliance upon the false information.

82.    Bulavinetz failed to exercise care in communicating employment terms, conditions, and compensation to Bell.

83.    Bell justifiably relied on Bulavinetz's representations for guidance in deciding whether to accept employment with Defendants and whether to remain

-11-

employed with Defendants.

84.     Bell's reliance upon Bulavinetz's negligent misrepresentations was the cause of financial damages to him in an amount to be proven at trial.

## COUNT SEVEN
### (Breach of Contract)

85.     The above allegations are incorporated herein by this reference.

86.     George Bell had an employment agreement with Defendant Transcor Group, Inc. The employment relationship is contractual in nature.

87.     During his employment with Transcor Group, Inc., which was later changed to INet, Incorporated, George Bell loaned money to INet, Incorporated.

88.     Under the terms of the employment agreement, George Bell was to be paid an annual salary on a monthly basis, be reimbursed for his business expenses and be paid back for loans he made to INet, Incorporated.

89.     INet, Incorporated has refused and failed to pay wages to George Bell, reimburse George Bell for business expenses and repay George Bell for loans he made to INet, Incorporated as agreed upon.

90.     INet, Incorporated has breached its employment agreement with George Bell.

91.     George Bell has been damaged by INet, Incorporated's breach in an amount to be determined at trial.

92.     George Bell is entitled to attorney fees and costs pursuant to A.R.S. §§ 12-341 and 12-341.01.

93.     INet, Incorporated was a mere alter ego and business conduit of Bulavinetz.

-12-

94.     George Bell has assigned his claims against INet, Incorporated and Bulavinetz to Bell pursuant to a written assignment agreement.

WHEREFORE, Plaintiff Joseph Todd Bell demands judgment against Defendants as follows:

A.     For treble damages from Defendants eCM Systems, Incorporated, eCM Global, LLC, and any successor companies and Bulavinetz for wages wrongfully withheld from Bell;

B.     For damages from Defendants in an amount to be proven at trial but for no less than $2,125,000.00;

C.     For punitive damages for Defendant Bulavinetz's willful and wanton actions taken in reckless disregard to the harm Bulavinetz would cause Plaintiff.

D.     For specific performance of Bell's employment agreement according to the true terms and provisions as declared by the Court;

E.     For attorney fees and costs incurred by Bell pursuant to A.R.S. §§ 12-341 and 12-341.01;

F.     For such further relief as the Court deems appropriate.

DATED this 6th day of November, 2015.

TIFFANY & BOSCO, P.A.

By: _Carlotta L. Turman_

Tina M. Ezzell
Carlotta L. Turman
Seventh Floor Camelback Esplanade II
2525 East Camelback Road
Phoenix, Arizona 85016-4237
*Attorneys for Plaintiff Joseph Todd Bell*

-13-

Tina M. Ezzell, State Bar No. 013825
Carlotta L. Turman, State Bar No. 022305

 **TIFFANY & BOSCO** P.A.

Seventh Floor Camelback Esplanade II
2525 East Camelback Road
Phoenix, Arizona 85016-9240
Telephone: (602) 255-6000
Facsimile:  (602) 255-0103
E-Mail:  tme@tblaw.com; clt@tblaw.com
*Attorneys for Plaintiff Joseph Todd Bell*

**COPY**

NOV **0 6** 2015

 MICHAEL K. JEANES, CLERK
J. BAKER
DEPUTY CLERK

**SUPERIOR COURT OF ARIZONA**
**COUNTY OF MARICOPA**

JOSEPH TODD BELL, a married man,

　　　　　　　Plaintiff,

　　vs.

TRANSCOR GROUP, INC., an Arizona
corporation; INET, INCORPORATED, an
Arizona corporation; EDOMINATE, INC., an
Arizona corporation; EDOMINATE, LLC, an
Arizona limited liability company; ECM
SYSTEMS, INCORPORATED, an Arizona
corporation; ECM GLOBAL, LLC, an Arizona
limited liability company; ECM GLOBAL, INC.,
an Arizona corporation; LOS GLOBAL
SYSTEMS, LLC, an Arizona limited liability
company; EGLOBAL SYSTEMS.US, LLC, an
Arizona limited liability company; JOHN
MICHAEL BULAVINETZ and DEBORAH
ANN WILLIAMSON BULAVINETZ, husband
and wife; JOHN DOES I through V, inclusive;
JANE DOES I through V, inclusive; ABC
CORPORATIONS I through V, inclusive, and
XYZ PARTNERSHIPS, I through V, inclusive,

　　　　　　　Defendants.

Case No. CV 2015-012649

**CERTIFICATE OF**
**COMPULSORY**
**ARBITRATION**

-1-

1    The undersigned certifies that she knows the dollar limits and other limitations set

2  forth by the local rules of practice for the applicable Superior Court, and further certifies

3  that this case IS NOT subject to compulsory arbitration as provided by Rules 72 through

4  76 of the Arizona Rules of Civil Procedure.

5    DATED this _6th_ day of November, 2015.

6                                          **TIFFANY & BOSCO, P.A.**

7

8

9    By: _Carlotta R. Turman_

10       Tina M. Ezzell
         Carlotta L. Turman
11       Seventh Floor Camelback Esplanade II
         2525 E. Camelback Rd.
12       Phoenix, AZ 85016
         *Attorneys for Plaintiff*

13

14

15

16

17

18

19

20

21

22

23

24

25

26