Tina M. Ezzell, State Bar No. 013825
Carlotta L. Turman, State Bar No. 022305

**TB TIFFANY & BOSCO**
P.A.

Seventh Floor Camelback Esplanade II
2525 East Camelback Road
Phoenix, Arizona 85016-9240
Telephone: (602) 255-6000
Facsimile:   (602) 255-0103
E-Mail:  tme@tblaw.com; clt@tblaw.com
*Attorneys for Plaintiff Joseph Todd Bell*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Joseph Todd Bell,<br><br>            Plaintiff,<br><br>     vs.<br><br>Transcor Group, Inc., et al.,<br><br>            Defendants. | Case No. CV-16-02436-PHX-SPL<br><br>**SECOND AMENDED COMPLAINT** |

Plaintiff Joseph Todd Bell, by and through counsel undersigned, complains and alleges as follows:

## PARTIES, JURISDICTION AND VENUE

1.  Plaintiff Joseph Todd Bell ("Bell" or "Plaintiff") is an individual residing in Maricopa County, Arizona.

2.  Defendant Transcor Group, Inc., was an Arizona corporation with its principal place of business in Phoenix, Arizona.

3.  Defendant INet, Incorporated, was an Arizona corporation with its principal place of business in Phoenix, Arizona.

4.  Defendant eDominate, Inc., was an Arizona corporation with its principal place of business in Phoenix, Arizona.

1

5. Defendant eDominate, LLC, is an Arizona limited liability company with its principal place of business in Phoenix, Arizona.

6. Defendant eCM Systems, Incorporated was an Arizona corporation with its principal place of business in Phoenix, Arizona.

7. Defendant eCM Global, LLC, was an Arizona limited liability company with its principal place of business in Phoenix, Arizona.

8. Defendant eCM Global, Inc., is an Arizona corporation with its principal place of business in Phoenix, Arizona.

9. Defendant LOS Global Systems, LLC, is an Arizona limited liability company with its principal place of business in Phoenix, Arizona.

10. Defendants John Michael Bulavinetz, also known as John Michael, and Deborah Ann Williamson Bulavinetz, also known as Deborah Williamson and Deborah Bulavinetz and Deborah Michael, (collectively "Bulavinetz") were, at all relevant times, husband and wife and residents of Maricopa County, Arizona. All relevant actions taken by John Michael Bulavinetz were done as an agent of the various defendant business entities and for the benefit of his marital community with Deborah and in Maricopa County, Arizona.

11. The various defendant business entities (collectively "Corporate Defendants") are successor companies that carried out the same business with the same assets, with the same owner as predecessor companies owned by Bulavinetz and are liable for the obligations of the predecessor companies owned by Bulavinetz.

12. Such unity of interest and ownership exists between the Corporate Defendants and Bulavinetz that the Corporate Defendants are mere alter egos or business conduits of Bulavinetz and the Corporate Defendants are mere alter egos or business conduits of one another. Therefore, Bulavinetz is personally liable for the conduct of the

2

1  Corporate Defendants and the Corporate Defendants are personally liable for the conduct
2  of one another and Bulavinetz.

3      13.    Upon information and belief, and consistent with the information available
4  from the Arizona Corporation Commission, Defendant John Michael Bulavinetz was the
5  President and Director of Transcor Group, Inc.

6      14.    Upon information and belief, and consistent with the information available
7  from the Arizona Corporation Commission, Defendant John Michael Bulavinetz was the
8  President/Chief Executive Officer and Director of INet, Incorporated and/or its
9  predecessor INet-Lenders, Inc.

10     15.    Upon information and belief, and consistent with the information available
11 from the Arizona Corporation Commission, Defendant John Michael Bulavinetz was the
12 President and Director of eDominate, Inc.

13     16.    Upon information and belief, and consistent with the information available
14 from the Arizona Corporation Commission, Defendant John Michael Bulavinetz was and
15 is a Manager/Member of eDominate, LLC.

16     17.    Upon information and belief, and consistent with the information available
17 from the Arizona Corporation Commission, Defendant John Michael Bulavinetz was the
18 Chief Executive Officer and Director of eCM Systems Incorporated.

19     18.    Upon information and belief, and consistent with the information available
20 from the Arizona Corporation Commission, Defendant John Michael Bulavinetz was a
21 Manager/Member of eCM Global, LLC.

22     19.    Upon information and belief, and consistent with the information available
23 from the Arizona Corporation Commission, Defendant Deborah Ann Williamson
24 Bulavinetz was a Manager/Member of eCM Global, LLC.

25     20.    Upon information and belief, and consistent with the information available
26

from the Arizona Corporation Commission, eCM Global, LLC, was converted to eCM Global, Inc., on or about June 12, 2015.

21. Upon information and belief, and consistent with the information available from the Arizona Corporation Commission, Defendant John Michael Bulavinetz was and is the President and Director of eCM Global, Inc.

22. Upon information and belief, and consistent with the information available from the Arizona Corporation Commission, Defendant Deborah Ann Williamson Bulavinetz was a Director of eCM Global, Inc.

23. Upon information and belief, and consistent with the information available from the Arizona Corporation Commission, Defendant John Michael Bulavinetz was and is a Manager/Member of LOS Global Systems, LLC.

24. The exact names and identities of Defendants identified herein as John Does I through V, inclusive; Jane Does I through V, inclusive; ABC Corporations I through V, inclusive; and XYZ Partnerships I through V, inclusive, are unknown to Plaintiff at this time, and Plaintiff is without knowledge and information regarding any other individuals who might be responsible for the damages hereinafter alleged, but will seek leave to amend this Complaint upon receipt of any such information.

25. This Court has jurisdiction over the subject matter and the parties hereto pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

26. Venue is proper under 28 U.S.C. § 1391(b) because all Defendants reside in this District and all Defendants are residents of the State of Arizona, and all or a substantial part of the events and omissions giving rise to the claims occurred in this District.

27. The named Defendants, by virtue of their own acts and omissions or by virtue of the acts and omissions committed by one or more of their agents, employees or

representatives, as described herein, have conducted business or caused events to occur within the District of Arizona and, more particularly, within Maricopa County, Arizona, as more particularly described herein so as to give rise to both subject matter and personal jurisdiction of this Court.

## GENERAL ALLEGATIONS

28. Bell began employment as a software salesperson in or about 1998 with the Defendants that existed at that time.

29. Under the agreement between Bell and Defendants, Bell initially agreed to work for an annual salary in the amount of $42,000.00 ($3,500.00 per month) and Defendants promised to pay Bell on a monthly basis. In addition, Bell was to be reimbursed by Defendants for all business expenses incurred and paid by Bell. In or about 2000, Bell and Defendants agreed to a promotion for Bell to Director of Business Development and an annual salary of $72,000.00 ($6,000.00 per month).

30. In or about September 2004, Defendants ceased paying Bell even though Bell continued to work for Defendants through September 2005.

31. Between February 2005 and August 2005, Bell loaned Defendants a total amount of $46,000.00 for Defendants' payroll and various other business expenses.

32. In or about September 2005, Bell ceased working for Defendants. At the time Bell terminated his employment with Defendants, he was owed unpaid wages for 2004 through 2005, had not been reimbursed for business expenses and had not been repaid for the loans made to Defendants. In order to induce Bell to refrain from suing, Bulavinetz promised Bell interests in the Corporate Defendants as well as future payment of prior missed wages (repeatedly from 2005 through 2015).

33. In 2008, Bulavinetz promised Bell that if he came back to work for Defendants, Bell would more quickly be able to recover the money still owed to him

from Defendants. Therefore, Bell began working for Defendants again in or about 2008.

34. In 2008, Bell's agreed-upon salary increased to $84,000.00 annually ($7,000.00 per month).

35. In 2009, Bell's agreed-upon salary was $84,000.00 annually ($7,000.00 per month).

36. In 2010, Bell's agreed-upon salary was $84,000.00 ($7,000.00 per month). However, Defendants failed to pay Bell all wages owed for 2010.

37. In or about 2011, Bell's salary increased to $84,000.00 net income (the parties agreed Defendants would pay Bell enough gross income such that he would receive and be able to keep, after taxes, $7,000.00 per month). However, Defendants failed to issue a W2 to Bell for the wages he received in 2011. In addition, Defendants failed to pay Bell all wages owed to him for 2011.

38. In or about 2012, Defendants started issuing Bell a 1099 instead of a W2 for tax purposes and promised to pay Bell's Federal and State taxes arising from the 1099.

39. Bell's agreed-upon salary was $84,000.00 net income for 2012 (the parties agreed Defendants would pay Bell enough gross income such that he would receive and be able to keep, after taxes, $7,000.00 per month). Defendants failed to pay Bell all wages owed to him for 2012.

40. In 2013, Bell's agreed upon salary was $84,000.00 net income (the parties agreed Defendants would pay Bell enough gross income such that he would receive and be able to keep, after taxes, $7,000.00 per month) and Defendants promised to pay Bell's Federal and State taxes for wages.

41. Defendants issued Bell both a 1099 and W2 for 2013, even though his job title and duties never changed.

42. In or about 2014, Bell's salary increased to $93,840.00 net income (the parties agreed Defendants would pay Bell enough gross income such that he would receive and be able to keep, after taxes, approximately $7,820.00 per month) and Defendants promised to pay Bell's Federal and State taxes for wages. Defendants issued Bell a 1099 for 2014.

43. Defendants failed to pay Bell all wages owed to him for 2014.

44. In or about December 2014, Bell's salary increased to $97,440.00 net income (the parties agreed Defendants would pay Bell enough gross income such that he would receive and be able to keep, after taxes, $8,120.00 per month). Defendants also promised to pay Bell's Federal and State taxes for wages for 2015.

45. On October 7, 2015, Bulavinetz announced that Bell's salary would be reduced to $6,000 per month and that a W2 would be issued for 1099 wages paid in 2015.

46. Defendants have failed to pay Bell all wages owed to him to date for 2015.

47. Defendants failed to pay all of Bell's Federal and State taxes for wages as promised.

48. Throughout his employment with Defendants, Bulavinetz made representations and promised Bell he would receive fifteen percent (15%) ownership in eGlobal Systems.US, ten percent (10%) of eCM Global, LLC, and eDominate, LLC, and six percent (6%) of the profits from eGlobal Systems.US and eCM Global, LLC, and fifteen (15%) of the profits from insurance revenues.

49. From approximately July 2014 through September 2015, Bell represented LOS Global Systems, LLC, a member of eGlobal Systems.US, LLC, on the Board of Directors for eGlobal Systems.US, LLC. Bell was never compensated for being on the Board of Directors.

50. Bell relied upon the agreements he had with Defendants and the promises

made by Bulavinetz, both when he accepted employment with Defendants and when he continued his employment with Defendants.

50. Despite demand, Defendants have refused and failed to compensate Bell all money due him as a result of his employment with Defendants.

51. Defendants still owe Bell for unpaid wages, unreimbursed business expenses, ownership interests in the Corporate Defendants, share of profits promised to him and repayment of loans made to Defendants by Bell.

**COUNT ONE**
**(Failure to Pay Wages)**

53. The above allegations are incorporated here by this reference.

54. Pursuant to A.R.S. § 23-352, no employer may withhold or divert any portion of an employee's wages.

55. Bell, an employee, was to be paid an annual salary on a monthly basis pursuant to the parties' agreement. Bell was also to be reimbursed for business expenses.

56. Defendants, employers, have failed to pay to Bell the full amount of wages due to him.

57. There is no legal justification for Defendants' failure to pay Bell his annual salary as agreed upon by the parties or to reimburse Bell for his expenses.

58. Pursuant to A.R.S. § 23-355 *et seq.*, Bell is entitled to recover from Defendants triple the amount of his unpaid wages.

**COUNT TWO**
**(Violation of the Fair Labor Standards Act)**

59. The above allegations are incorporated here by this reference.

60. In the alternative, Bell brings his claim for unpaid wages under the Fair Labor Standards Act ("FLSA").

61. At all relevant times, Bell was an "employee" of various Corporate

8

Defendants as defined by 29 U.S.C. § 203(e)(1).

62. The provisions set forth in 29 U.S.C. § 206 of the FLSA apply to the Corporate Defendants.

63. At all relevant times, the Corporate Defendants were and continue to be "employers" as defined in 29 U.S.C. § 203(d).

64. On information and belief, Defendants John Michael Bulavinetz and Deborah Ann Williamson Bulavinetz are deemed an "employer" for purposes of the FLSA, including, without limitation, 29 U.S.C. § 216, and are co-equally liable with the Corporate Defendants for all matters.

65. Each of the Defendants should be deemed an "employer" for purposes of the FLSA including, without limitation, 29 U.S.C. § 216.

66. All Defendants are co-equally liable for all matters.

67. On information and belief, Defendants John Michael Bulavinetz and Deborah Ann Williamson Bulavinetz make all decisions on the daily activities of their employees and make all decisions regarding pay policies and exerted financial and operative control over the Corporate Defendants, and are therefore individually liable under the FLSA.

68. On information and belief, Defendants John Michael Bulavinetz and Deborah Ann Williamson Bulavinetz had the power to close the Corporate Defendants, the power to hire and fire employees, the power to hire managerial employees and the power to maintain employment records.

69. On information and belief, Defendants John Michael Bulavinetz and Deborah Ann Williamson Bulavinetz profited from the FLSA violations set forth in this complaint.

70. At all relevant times, Defendants John Michael Bulavinetz and Deborah

1  Ann Williamson Bulavinetz were Bell's joint employers as defined by 29 U.S.C. § 201 *et seq.*

71. At all relevant times, the Corporate Defendants were and are enterprises engaged in commerce or in the production of goods for commerce, as defined by 29 U.S.C. § 203(s)(1) of the FLSA.

72. At all relevant times, the Corporate Defendants had two (2) or more employees handling, selling, or otherwise working on goods or materials that had been moved in or had been produced for commerce.

73. Upon information and belief, at all relevant times, the annual gross revenue of the Corporate Defendants exceeded $500,000.

74. Bell was regularly engaged in commerce or in the production of goods for commerce.

75. Employers must compensate employees for all work that employers permit employees to perform. *See* 29 C.F.R § 785.11. In such cases, it is the responsibility of employers' management to ensure that work is not performed if management does not desire for such work to be performed. *See* 29 C.F.R. § 785.13. Employers may not accept the benefits of employees performing work without compensating the employees for their work. *Id.*

76. To the extent that Defendants claim Bell was not compensated on a salary basis (i.e., regularly received a predetermined amount of compensation each pay period on a weekly, or less frequent, basis), but was instead compensated at Defendants' whim, allegedly based on Bell's and the Corporate Defendants' performance, Bell's productivity, and the Corporate Defendants' profitability, Bell's claims are covered under the FLSA (i.e., Bell was not an exempt employee).

77. Bell, a salaried employee, was to be paid a predetermined annual salary on

1 a monthly basis pursuant to the parties' agreements. Bell was also to be reimbursed for business expenses.

78. Under the FLSA, an employer must pay a salaried employee the full predetermined salary amount for any week in which the employee performs any work, regardless of the number of days or hours worked.

79. Under the FLSA, it is a violation of the FLSA to make deductions from the predetermined salary of an employee based on determinations concerning the operating requirements of the business.

80. Defendants had an actual practice of making improper deductions from employees' salaries and/or not paying them their full salaries during weeks in which the employees performed work, based on the operating requirements of the Corporate Defendants.

81. Under the FLSA, if an employer makes impermissible deductions from the predetermined salary of an employee due to a slowdown in business, the employer loses the exemption during the time period of the improper deductions for all employees in the same job classification working for the same managers responsible for the improper deductions.

82. Defendants, employers, have intentionally and willfully failed to pay to Bell the full amount of his predetermined salary for work he performed for Defendants.

83. Defendants willfully made impermissible deductions from Bell's predetermined salary based on determinations regarding the operating requirements of the Corporate Defendants.

84. Defendants intentionally and willfully failed and/or refused to pay Bell for weeks and months at a time, failing to even pay Bell minimum wage for the work he performed.

85. Defendants refused and/or failed to properly disclose to or apprise Bell of his rights under the FLSA.

86. Defendants failed to keep proper time records in violation of the FLSA

87. As a direct result of Defendants' violations of the FLSA, Bell has suffered damages by not receiving compensation in accordance with the provisions of the FLSA.

88. Defendants' actions in failing to compensate Bell in violation of the FLSA were willful.

89. Defendants have not made a good faith effort to comply with the FLSA.

90. Pursuant to the FLSA, Bell is entitled to recover from Defendants his unpaid back wages and an equal amount as liquidated damages, and litigation expenses and attorney fees under 29 U.S.C. § 216 in an amount to be determined at trial.

**COUNT THREE**
**(Breach of Contract)**

91. The above allegations are incorporated here by this reference.

92. Bell had agreements with Defendants, both for wages and for other remuneration.

93. Among the terms of the parties' contracts was that Bell would be paid an annual salary on a monthly basis, be reimbursed for his business expenses and be paid back for loans he made to Defendants.

94. During Bell's employment and to induce Bell to both continue working for Defendants and to refrain from suing, Bulavinetz promised and the parties agreed that Bell would receive ownership interests in eGlobal Systems.US, eCM Global, LLC, Transcor Group, INet, eDominate and eCM Systems and share in profits.

95. Defendants have refused and failed to pay wages to Bell, reimburse Bell for business expenses, repay Bell for loans made to Defendants, transfer the promised

1 ownership interests in the Corporate Defendants and pay Bell his promised share of profits.

96. Defendants have breached their agreements with Bell.

97. Defendants' failures to fulfill their promises constitute breaches of their agreements with Bell.

98. Bell has been damaged by Defendants' breaches in an amount to be determined at trial.

99. Bell is entitled to specific performance of the terms, conditions and provisions of his agreements with Defendants, by Court decree, ordering Defendants to comply with the parties' agreement.

100. Bell is entitled to attorney fees and costs pursuant to A.R.S. §§ 12-341 and 12-341.01.

**COUNT FOUR**
**(Breach of the Implied Covenant of Good Faith and Fair Dealing)**

101. The above allegations are incorporated herein by this reference.

102. Implied in every contract is a covenant of good faith and fair dealing which prohibits any party to a contract from acting in a manner that deprives any other party of the benefit of its bargain.

103. A party can breach the covenant of good faith and fair dealing both by exercising express discretion in a way inconsistent with another party's reasonable expectations and by acting in ways not expressly excluded by the contract's terms but which nonetheless bear adversely on a party's reasonably expected benefits of the bargain.

104. Bell rendered labor and services for Defendants, paid business expenses and made business loans to Defendants, for which he had a reasonable expectation to be

paid, reimbursed and repaid under his agreements, and forestalled legal action. By failing to compensate Bell, Defendants have breached the express and implied terms of their contracts with Bell.

105. As a result of Defendants' breaches of contract, including breaches of the covenant of good faith and fair dealing, Bell has been damaged financially in an amount to be proven at trial.

**COUNT FIVE**
**(Unjust Enrichment)**

106. The above allegations are incorporated herein by this reference.

107. In the alternative, and only if Bell's other claims fail, Bell asserts this unjust enrichment claim against Defendants.

108. Defendants were enriched when Bell rendered labor and services for Defendants but Defendants failed to pay Bell his earned wages, reimburse him for his business expenses, transfer the promised ownership interests in the Corporate Defendants, pay Bell his promised share of profits and repay business loans made to Defendants by Bell.

109. Bell was impoverished when he rendered labor and services for Defendants, paid business expenses, loaned money to Defendants, and forestalled legal action, but received no compensation for his labor, services and forbearance, and no reimbursement for business expenses and was never repaid for business loans made to Defendants.

110. There is no justification for Bell's impoverishment and Defendants' corresponding enrichment.

111. Should Bell's contract and statutory unpaid wages claims fail, then Bell will have no adequate legal remedy to address his impoverishment.

## COUNT SIX
### (Fraud)
### (Against Defendants John Michael Bulavinetz and Deborah Ann Williamson Bulavinetz)

112. The above allegations are incorporated herein by this reference.

113. Bulavinetz made oral and written promises and representations to Bell regarding how he would be compensated during his employment with Defendants.

114. Bulavinetz induced Bell to come back and continue working for Defendants by promising Bell that he would be paid past missed wages, would receive ownership interests in eGlobal Systems.US, eCM Global, LLC, Transcor Group, INet, eDominate and eCM Systems, and receive shares in profits.

115. Bulavinetz's promises and representations were material because they induced Bell to accept employment with Defendants and to continue his employment with Defendants.

116. Bulavinetz's promises and representations were false.  Upon information and belief, at the time Bulavinetz made his promises, he never intended to give Bell ownership interests in the Corporate Defendants, share in profits, or compensate Bell for prior unpaid wages.

117. At the time Bulavinetz made his promises and representations, he knew his promises and representations were false.

118. Bulavinetz intended that his promises and representations be acted upon by Bell and in the manner reasonably contemplated.

119. Bell was ignorant of the falsity of Bulavinetz's promises and representations.

120. Bell relied on the truth of Bulavinetz's promises and representations.

121. Bell had a right to rely on Bulavinetz's promises and representations.

122. Bell was consequently and proximately injured in an amount to be proven

15

at trial.

## COUNT SEVEN
### (Negligent Misrepresentation)

123. The above allegations are incorporated herein by this reference.

124. Bulavinetz supplied false information to Bell about his employment terms, conditions, and compensation prior to and while employed with Defendants.

125. Bulavinetz intended, knew, or reasonably should have foreseen Bell's reliance upon the false information.

126. Bulavinetz failed to exercise care in communicating employment terms, conditions, and compensation to Bell.

127. Bell justifiably relied on Bulavinetz's representations for guidance in deciding whether to accept employment with Defendants and whether to remain employed with Defendants.

128. Bell's reliance upon Bulavinetz's negligent misrepresentations was the cause of financial damages to him in an amount to be proven at trial.

## COUNT EIGHT
### (Promissory Estoppel)

129. The above allegations are incorporated herein by this reference.

130. Throughout the years of Bell's employment, Bulavinetz continuously promised Bell that he would receive ownership interests in eGlobal Systems.US, eCM Global, LLC, Transcor Group, INet, eDominate and eCM Systems, share in profits of Defendants, and be compensated for prior unpaid wages.

131. Bulavinetz made such promises in part to induce Bell to come back to and continue working for Defendants.

132. Bulavinetz made such promises in part to induce Bell to refrain from taking

1  any legal action against Defendants for failure to pay wages and make reimbursements to
2  Bell and for failure to repay Bell's loans to Defendants.

3      133.   Based on Bulavinetz's promises, Bell had no reason to believe that
4  Defendants would fail to give him ownership interests in the Corporate Defendants, fail
5  to pay Bell profits, and fail to compensate Bell for prior unpaid wages.

6      134.   Bell continued to work for Defendants in detrimental reliance on the
7  promises made by Bulavinetz.

8      135.   Until this lawsuit, Bell did not take any legal action against Defendants for
9  unpaid wages and reimbursements, and Defendants' failure to repay the loan to Bell, in
10 detrimental reliance on the promises made by Bulavinetz.

11     136.   To date, Defendants have not transferred to Bell the promised ownership
12 interests in the Corporate Defendants, has not paid Bell his share in profits, and has not
13 compensated Bell for his prior unpaid wages.

14     137.   Since Bell relied to his detriment upon Bulavinetz's promises as set forth
15 above, Defendants are estopped from denying the parties' agreements.

16     138.   Injustice can only be avoided through enforcement of Bulavinetz's
17 promises.

**COUNT NINE**
**(Breach of Contract)**

20     139.   The above allegations are incorporated herein by this reference.

21     140.   George Bell had an agreement with Defendant Transcor Group, Inc., both
22 for wages and for other remuneration.

23     141.   During his employment with Transcor Group, Inc., which was later
24 changed to INet, Incorporated, George Bell loaned money to INet, Incorporated.

25     142.   Under the terms of the agreement, George Bell was to be paid an annual

1 salary on a monthly basis, be reimbursed for his business expenses and be paid back for
2 loans he made to INet, Incorporated.

3     143. INet, Incorporated has refused and failed to pay wages to George Bell,
4 reimburse George Bell for business expenses and repay George Bell for loans he made to
5 INet, Incorporated as agreed upon.

6     144. INet, Incorporated has breached its agreement with George Bell.

7     145. George Bell has been damaged by INet, Incorporated's breach in an amount
8 to be determined at trial.

9     146. George Bell is entitled to attorney fees and costs pursuant to A.R.S. §§ 12-
10 341 and 12-341.01.

11     147. INet, Incorporated was a mere alter ego and business conduit of Bulavinetz.

12     148. George Bell has assigned his claims against INet, Incorporated and
13 Bulavinetz to Bell pursuant to a written assignment agreement.

14     WHEREFORE, Plaintiff Joseph Todd Bell demands judgment against Defendants
15 as follows:

16     A. For treble damages from Defendants eCM Systems, Incorporated, eCM
17 Global, LLC, and any successor companies and Bulavinetz for wages wrongfully
18 withheld from Bell under A.R.S. § 23-355 *et seq.*;

19     B. For double damages from the Corporate Defendants for unpaid back wages,
20 and litigation expenses and attorney fees under the FLSA.

21     C. For damages from Defendants in an amount to be proven at trial but for no
22 less than $3,000,000.00;

23     D. For punitive damages for Defendant Bulavinetz's willful and wanton
24 actions taken in reckless disregard to the harm Bulavinetz would cause Plaintiff.

25     E. Ordering Defendants to comply with the parties' agreements and transfer to
26

1  Bell ownership interests in the Corporate Defendants, pay Bell his share in profits, and
2  compensate Bell for prior unpaid wages.
3       F.     For specific performance of Bell's agreements according to the true terms
4  and provisions as declared by the Court;
5       G.     For attorney fees and costs incurred by Bell pursuant to A.R.S. §§ 12-341
6  and 12-341.01; and
7       H.     For such further relief as the Court deems appropriate.
8       DATED this 8th day of November, 2016.

                    TIFFANY & BOSCO, P.A.

                    By: */s/ Carlotta L. Turman*
                        Tina M. Ezzell
                        Carlotta L. Turman
                        Seventh Floor Camelback Esplanade II
                        2525 East Camelback Road
                        Phoenix, Arizona 85016-4237
                        *Attorneys for Plaintiff Joseph Todd Bell*

**CERTIFICATE OF SERVICE**

     I hereby certify that on November 8, 2016, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants for this case.

By: */s/ Tina M. Ezzell*